## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENEDICT SOKOLOWSKI, | : | |
| LYNDA SOKOLOWSKI, | : | |
| | : | |
| **Plaintiff,** | : | |
| v. | : | **3:23-CV-00150** |
| | : | **(JUDGE MARIANI)** |
| FALLING CREEK BUILDERS, LLC, | : | |
| FALLING CREEK BUILDERS, INC., | : | |
| FALLING CREEK BUILDERS, | : | |
| FALLING CREEK, LLC, | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Plaintiffs Benedict and Lynda Sokolowski's Motion for

Default Judgment Against Defendants Falling Creek Builders, LLC, Falling Creek Builders,

Inc., Falling Creek Builders, Falling Creek, LLC (Doc. 8). For the reasons discussed below,

the Court will grant the Plaintiffs' Motion but will request both an affidavit and additional

documentation to determine the issue of damages.

### II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, "[w]hen a party against whom a

judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

failure is shown by affidavit or otherwise, the clerk must enter the party's default". Fed. R.

Civ. P. 55(a). Upon the party's request, the clerk of court may then enter default judgment,

but only if the claim is for a sum certain or one that can be made certain by computation, the defendant has made no appearance, and the defendant is not a minor or incompetent. *Id.* at 55(b)(1). In all other cases, the party seeking a default judgment must make an application to the court. *Id.* at 55(b)(2).

Although the entry of default judgment is "left primarily to the discretion of the district court", the discretion is not limitless given that cases should "be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-1181 (3d Cir. 1984). "Where a court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n. 6 (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

### III. BACKGROUND

The well-pleaded factual allegations of the Complaint, which the Court takes as true, *see DIRECTV*, 431 F.3d at 165 n. 6, are set forth below.

### (a) Loans and Bankruptcy Proceedings

On January 29, 2015, Plaintiffs entered into a construction loan agreement with ESSA Bank in which ESSA Bank would lend $430,216.00 to Plaintiffs for the construction of a dwelling. (Compl., Doc. 1 ¶ 22.)  Under the terms of the loan agreement, ESSA Bank released $100,000 to Falling Creek, LLC, but held the remaining funds in escrow to be released as work was performed. (Compl. ¶ 23.) By November 2017, Falling Creek, LLC

2

had failed to complete the construction such that Plaintiffs were unable to obtain a certificate of occupancy. (Compl. ¶ 24.) While additional funds were held in escrow, ESSA Bank would not release any funds to any contractor other than Falling Creek, LLC without Falling Creek, LLC's approval. (Compl. ¶ 25.) Thus, Plaintiffs could not hire another contractor with the money held in escrow. (Compl. ¶ 26.)  Plaintiffs therefore filed a Motion to Reject and/or Reform Executory Contract in bankruptcy court on November 13, 2017. (Compl. ¶ 27.)

On March 9, 2018, the Honorable John J. Thomas, bankruptcy judge, entered an Order rejecting the construction contract between Plaintiffs and Falling Creek, LLC. (Compl. ¶ 28.) ESSA Bank then released the remaining funds held in escrow to another contractor who finished the work on the property. (Compl. ¶ 29.) Falling Creek, LLC did not file a Proof of Claim in the First Bankruptcy and did not respond to Plaintiffs Motion to Reject Executory Contract. (Compl. ¶ 30.)

In August 2018, Plaintiffs filed the Second Bankruptcy and again noticed Falling Creek, LLC of the filing. (Compl. ¶ 31.) Falling Creek, LLC did not file a Proof of Claim in the Second Bankruptcy. (Compl. ¶ 32.) Plaintiffs believe and therefore aver that no debt was due to Falling Creek, LLC on the Construction Debt for two reasons:

    a.  First, Falling Creek, LLC failed to perform under the contract and ESSA Bank and Plaintiffs were forced to hire another contractor to complete the work.

    b.  Second, the Bankruptcy Court rejected the contract in its March 9, 2018 Order.

(Compl. ¶ 33.)

3

### (b) The HOA Debt

Plaintiffs assert that the property purchased from Falling Creek, LLC is governed by Pennsylvania's Uniform Planned Community Act. (Compl. ¶ 34.) Plaintiffs were assessed yearly dues of $300. (Compl. ¶ 35.) Plaintiffs did not pay the dues from 2016 through 2022 as they were in active bankruptcy during that time. (Compl. ¶ 36.) Falling Creek, LLC did not file a Proof of Claim for the HOA Debt in the First Bankruptcy or in the Second Bankruptcy. (Compl. ¶ 37.) Plaintiffs do not dispute that dues in the amount of $2100 were owed for the period of 2016 through 2022; however, Plaintiffs claim that Defendants charged illegal late fees for this time period. (Compl. ¶ 38.) Plaintiffs were in an active Chapter 13 bankruptcy from September 19, 2017, through May 11, 2018, and from August 21, 2018, through September 30, 2022. (Compl. ¶ 39.) Plaintiffs do not dispute that dues were owed in the amount of $300 per year for the 2016 and 2017 dues years; however, Plaintiffs assert that these antecedent debts were deemed current by operation of law when Plaintiffs filed their Chapter 13 bankruptcy petition. (Compl. ¶ 40.)

Defendants did not file a Proof of Claim from the Chapter 13 Plan. (Compl. ¶ 41.) Plaintiffs allege that, had Defendants filed a Claim, their debt would have been paid, but in no event were Defendants able to charge continued late fees for an antecedent debt during an active Chapter 13 bankruptcy. (Compl. ¶ 42.) Plaintiffs claim that the late fees identified in the First Letter, Second Letter, and Third Letter are in violation of the Bankruptcy Code. (Compl. ¶ 43.)

### (c) The First Sale Attempt

On January 14, 2022, Plaintiffs entered into an Agreement of Sale with Frank
Bevacqua and Michaelli Bevacqua ("Buyers") to sell their home at 124 Falling Water Court
for $775,250.00. (Compl. ¶ 44.) As the parties prepared to close, the agent for the Buyers,
Todd Oessenick, was in contact with Jack Rybner, President of Falling Creek, LLC, to
obtain a resale certificate from Falling Creek, LLC. (*Id.* ¶ 45.) At that time, Rybner informed
Oessenick that Plaintiffs owed $18,500 for the Construction Debt. (*Id.* ¶ 46.) Rybner further
informed Oessenick that Rybner would continue to assert the Construction Debt in order to
cause a title problem for Plaintiffs on their sale. (*Id.* ¶ 47.) Ultimately, as a result of Rybner's
alleged misrepresentations regarding the Construction Debt, Buyers terminated their
agreement with Plaintiffs due to Plaintiffs' inability to sell the property with clear title quickly.
(*Id.* ¶ 48.)

### (d) The Second Sale Attempt

On June 1, 2022, Plaintiffs entered into an Agreement of Sale with Laura Puopolo to
sell their home at 124 Falling Water Court for $750,000.00. (Compl. ¶ 49.) As they were
preparing to close, Falling Creek, LLC, through Rybner, asserted a lien for both the
Construction Debt and the HOA Debt. (*Id.* ¶ 50.) The Debt Collector Defendants sent a
letter on August 1, 2022, to Laura Puopolo regarding Plaintiffs purported debts including
both the Construction Debt in the alleged amount of $18,500 and the HOA Debt in the
alleged amount of $2,100 plus late fees of $4,200. (*Id.* ¶ 51.) As Plaintiffs could not afford to

lose a second sale, Plaintiffs elected to pay the full amount requested by Falling Creek,

LLC, even though they did not owe it, so that they could close with clear title. (*Id.* ¶ 52.)

### (e) Misleading and/or False Communications

Plaintiffs allege that Defendants engaged a series of misleading and/or false

communications via telephone and letter which violate the FDCPA and other consumer

protection statutes. (Compl. ¶ 53.) Plaintiffs claim that these were "communications" as

defined by 15 U.S.C. §1692a(2). (*Id.*) Falling Creek, LLC told Oessenick that Plaintiffs owed

$18,500 for the Construction Debt, which Plaintiffs claim they did not owe. (*Id.* ¶¶ 54-55.)

Debt Collector Defendants nonetheless included an $18,500 Construction Debt in the

Second Letter and Third Letter when Plaintiffs did not owe the Construction Debt. (*Id.* ¶ 56.)

Among other things, Plaintiffs allege these communications were false and misleading as

they represented that Plaintiff owed the Construction Debt, when they did not. (*Id.* ¶ 57.) As

set forth above, Plaintiffs did not owe the late fees for the HOA Debt. (*Id.* ¶ 58.) Plaintiffs

allege that Debt Collector Defendants misrepresented these late fees in the First Letter,

Second Letter, and Third Letter. (Compl. ¶ 59.) Among other things, these communications

were false and misleading as they represented that Plaintiff owed the late fees, when in fact,

the imposition of these fees were precluded by law. (*Id.* ¶ 60.) The First Letter was sent on

January 30, 2021, during a period of time in which Plaintiffs were in an active Chapter 13

bankruptcy. (*Id.* ¶ 61.)

The First Letter sent to Plaintiffs contains a statement that "[i]f payment is not received on or before February 25, 2021 your file will be sent to our attorney." (Compl. ¶ 63.) However, Defendants never sent the file to an attorney after February 25, 2021 as stated in the letter. (*Id.* ¶ 65.) Moreover, Plaintiffs assert that they were provided legal protection by the automatic stay of the Bankruptcy Code and thus, no action could be taken without relief from the automatic stay. (*Id.* ¶ 66.) The Third Letter was not sent to Plaintiffs, but to Laura Puopolo. (*Id.* ¶ 67.)  Additionally, Rybner communicated with Oessenick about Plaintiffs' debt, which Plaintiffs claim is prohibited under 11 U.S.C. §§ 1692b(2), 1692b(6). (*Id.* ¶¶ 68-71.)

## (f) Counts

Plaintiffs' first count alleges that Defendants violated the Fair Debt Collection Practices Act 15 U.S.C. §1692, *et seq.*, by sending various aforementioned letters and communications to Plaintiffs and prospective buyers of Plaintiffs' home. (Compl. ¶¶ 79-92.) Plaintiffs' second count alleges that Defendants violated the Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, *et seq.*, through their violations of the FDCPA as a creditor. (*Id.* ¶¶ 93-109.) Finally, Plaintiffs' third count alleges that Defendants violated the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. 201-1, *et seq.*, because Defendants' violations of the FCEUA are a *per se* unfair and deceptive practice pursuant to 73 P.S. §2270.5(a). (*Id.* ¶¶ 110-113.)

## IV. ANALYSIS

### a. Default Judgment

Plaintiffs contend that they are entitled to default judgment due to Defendants' failure to litigate this matter. (Doc. 8 ¶ 11.) For the reasons explained below, Plaintiffs have satisfied all of the requirements necessary to obtain a default judgment against Defendants.

In determining whether to grant a motion for default judgment, a Court must consider three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Here, the record demonstrates that Defendants were served via certified mail on February 10th, 11th, and 15th of 2023. (*See* Doc. 5). Defendants have failed to file any pleading or perform any other action to otherwise defend the case. The Clerk of Court entered default against Defendants on March 13, 2023. (Doc. 7).

With respect to the prejudice to the Plaintiffs if default is denied, this factor weighs in favor of Plaintiffs. Absent the default judgment, Plaintiffs will be faced with an indefinite delay in the adjudication of their claims, and uncertainty as to what and when Defendants may assert. Plaintiffs are further left with no alternative means to assert their claims against the defaulting party and ensure that Defendants will not later attempt to assert defenses in this litigation.

As to whether Defendants appear to have a litigable defense, this factor also weighs in favor of Plaintiffs. "The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951); *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)). In the present action, Defendants have not filed an answer or performed any other action to defend the case. In the absence of any response by Defendants, the Court is unable to determine the viability of any possible defenses which may constitute a complete defense in this action. *See e.g., Joe Hand Promotions, Inc. v. Yakubets*, 3 F.Supp.3d 261, 271-272 (E.D. Pa. 2014) ("[O]utside of the court's obligation to decide whether it has jurisdiction and whether the complaint states a claim, the court may presume that an absent defendant who has failed to answer has no meritorious defense, *e.g., Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *5 (D.N.J. July 17, 2013), because '[i]t is not the court's responsibility to research the law and construct the parties' arguments for them'") (quoting *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008)).

The third factor, whether Defendants' delay is due to culpable conduct, also weighs in favor of the Plaintiffs. "In this context culpable conduct means action taken willfully or in bad faith." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983). Although the Court is reluctant to attribute bad faith to the defaulting defendant, Defendants

9

have been on notice of this action since, at latest, February 15, 2023, when it was last

served via certified mail with the Summons and the Complaint. (*See* Doc. 9). Thus,

Defendants have failed to respond or take any action to defend this lawsuit for over 11

months. This lack of action amounts to deliberate and willful conduct. *See e.g., Eastern

Elec. Corp. of N.J. v. Shoemaker Const. Co.*, 657 F.Supp.2d 545, 554 (E.D. Pa. 2009)

(finding defendant's conduct to be "culpable" where defendants were served with all

pleadings and other documents and defendants did not engage in litigation process or offer

any reason for their "failure or refusal" to do so and further explaining that "for the Court to

conclude otherwise would be to reward the recalcitrant or the oppositional and

uncooperative."). Therefore, the Court concludes that default judgment will be entered

against Defendants.

### b. Damages

Pursuant to the Federal Rules of Civil Procedure, a Court "may conduct hearings or

make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an

accounting; (B) determine the amount of damages; (C) establish the truth of any allegation

by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 50(b)(2); *see also Eastern

Electric Corp. of N.J.*, 657 F. Supp. 3d at 552 (citing *Durant v. Husband*, 28 F.3d 12, 15 (3d

Cir. 1994)). There is no requirement that the Court conduct a formal hearing, but instead

may request that "the parties submit affidavits and other materials from which the court can

decide the issue." *Id.* (quoting Moore's Federal Practice 3d § 55.32(2)(c)) (internal quotation marks omitted).

Although the Court does not take as true the moving party's factual allegations or legal conclusions relating to the amount of damages as set forth in the Complaint, *Comdyne I, Inc.,* 908 F.2d at 1149, the Court notes that Plaintiffs make various allegations regarding damages in their Complaint. Plaintiffs contend that, in addition to the statutory damages authorized by the consumer protection statutes, they have suffered ascertainable damages. (Compl. ¶ 72.) Plaintiffs allege that they were forced to pay debts they did not owe in the amount of $18,500 for the Construction Debt and $2,200 for the HOA Debt. (*Id.* ¶ 73.) Plaintiffs also allege that they lost the first buyers for their house due to the conduct of the Defendants, contending that the second offer on their house was $25,200 lower than the first offer. (*Id.* ¶ 75.) Therefore, Plaintiffs allege that they lost $25,200 due to Defendants' illegal conduct. (*Id.* ¶ 76.) In sum, Plaintiffs claim that their ascertainable economic damages are $45,200. (*Id.* ¶ 77.) In addition to these economic damages, Plaintiffs assert that Defendants' conduct resulted in non-economic damages in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy. (*Id.* ¶ 78.)

With respect to these alleged damages, Plaintiffs must submit something more than simply explaining the damages to which they believe they are entitled to in their Complaint

and Motion for Default Judgement. Accordingly, while the Court does not believe that a formal hearing is necessary, Plaintiffs must submit a more detailed affidavit and documentation from which the Court can decide the issue of damages.

Thus, while the Court will grant default judgment in favor of Plaintiffs, the Court will also direct Plaintiffs to submit a detailed affidavit, along with other materials that may shed light on the extent of Plaintiffs' actual damages, before the Court enters an award of damages.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Default Judgment Against Defendants (Doc. 8). Plaintiffs will be directed to provide the Court with both an affidavit and supporting documentation and evidence so that the Court may decide the issue of damages.

Robert D. Mariani
United States District Judge