**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BENEDICT SOKOLOWSKI, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>FALLING CREEK BUILDERS, ET AL.,<br><br>Defendants. | CIVIL NO. 3:23-CV-00150<br><br>(Magistrate Judge Latella) |

# MEMORANDUM OPINION

## I. INTRODUCTION

Plaintiffs Benedict Sokolowski and Lynda Sokolowski ("Plaintiffs") filed this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*., Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, *et seq*., and Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. 201-1, *et seq*., alleging that Defendants Falling Creek Builders, LLC, Falling Creek Builders, Inc., Falling Creek Builders, and Falling Creek, LLC ("Defendants") engaged in a series of misleading and/or false communications in attempt to collect debts from Plaintiffs. Plaintiffs filed a Motion for Partial Summary Judgment as

to Defendants' liability, seeking to leave damages for a later hearing. For the reasons set forth herein, Plaintiffs' Motion for Partial Summary Judgment will be denied.

## II. PROCEDURAL HISTORY

Plaintiffs initiated this action by filing a Complaint against Defendants on January 29, 2023. (Doc. 1). Because the Defendants did not file a response to the Complaint within the proper timeframe, Plaintiffs filed a Motion for Entry of Default on March 10, 2023. (Doc. 6). Then, on March 13, 2023, the Clerk of the Court filed an Entry of Default in favor of Plaintiffs. (Doc. 7). Plaintiffs subsequently filed a Motion for Default Judgment on March 13, 2023 that the Court granted on January 22, 2024, with a requirement that Plaintiffs file an affidavit and documentation providing additional support for their request for monetary damages. (Docs. 8 and 12).

Defendants filed an Answer to Plaintiffs' Complaint (Doc. 15) on March 22, 2024, before filing a Petition to Open Judgment on April 9, 2024. (Doc. 16). Judge Robert D. Mariani granted Defendants' Petition to Open Judgment on May 17, 2024. (Doc. 20).

After the parties consented to jurisdiction by a federal magistrate judge pursuant to 28 U.S.C. 636(c)(1) on June 21, 2025, (Doc. 32), the case was assigned to the undersigned on June 23, 2025. (Doc. 33). A Case Management Order was issued on September 25, 2026, setting deadlines for Joinder of Parties, Amendments to Pleadings, Discovery, Plaintiffs' and Defendants' Expert Reports, and Dispositive Motions. (Doc. 37). Plaintiffs submitted a letter requesting an extension of time to complete discovery (Doc. 38) on October 27, 2025, that was granted on October 31, 2025 (Doc. 39).

Plaintiffs filed a Motion for Partial Summary Judgment, (doc. 41), and a supporting brief, (doc. 42), on February 20, 2026. Defendants filed a "Brief in Opposition" to Plaintiffs' Motion for Partial Summary Judgment, (doc. 43), and a Response to Plaintiffs' Statement of Material Facts, (doc. 44), on February 20, 2026. On February 23, 2026, Defendants re-filed their "Brief in Opposition" to file exhibits as separate attachments. (Doc. 45).

Because the parties' filings did not comport with the requirements of Middle District Local Rule 56.1, an Order was issued on July 13, 2026, giving Defendants an opportunity to re-file their opposition

papers with properly supported factual positions. (Doc. 46). That Order also gave Plaintiffs an opportunity to: file a statement of material facts that complied with M.D. Pa. Local Rule 56.1 and respond to Defendants' re-filed papers. (*Id.*). Plaintiffs submitted a Statement of Facts in Support of Their Motion for Partial Summary Judgment on July 15, 2026. (Doc. 47). And on July 27, 2026, Defendants submitted an Amended Response to Plaintiffs' Motion for Partial Summary Judgment, which included a Response to Plaintiff's Statement of Material Facts and a Brief in Response to Plaintiff's Motion for Partial Summary Judgment. (Doc. 48). Plaintiffs responded on August 7, 2026 with a Reply Brief in Support of Their Motion for Partial Summary Judgment. (Doc. 49).

Plaintiffs' Motion for Partial Summary Judgment is now ripe for disposition.

## III. FACTUAL BACKGROUND[1]

This controversy stems from communications regarding two separate debts that Plaintiffs may or may not have owed Defendants. (Doc. 47 at ¶ 1). Defendant "Falling Creek, LLC" claims that Plaintiffs owe Defendants money from: (1) a construction agreement and (2) homeowner's association dues. (*Id.* at ¶¶ 2-3).

### A. Origin of the Alleged Debts

#### i. The Construction Costs

Plaintiffs contracted with Defendant Falling Creek, LLC on October 22, 2014 for the construction of a residence. (Doc. 41-1; Doc. 47. at ¶ 4). Under the contract, titled "Agreement of Sale and Construction Agreement" ("Construction Agreement"), Plaintiffs agreed to pay $490,216.00 to Falling Creek, LLC in exchange for the construction of a

[1] The facts set forth herein are derived from Plaintiffs' Statement of Facts in Support of Their Motion for Partial Summary Judgment (Doc. 47). Because Defendants' Amended Response to Plaintiffs' Motion for Partial Summary Judgment, (doc. 48), does not match Plaintiffs' Statement of Facts in Support of Their Motion for Partial Summary Judgment, (doc. 47), and further because Plaintiffs' Motion for Partial Summary Judgment will be denied, this Memorandum will rely on Plaintiffs' framing of the facts.

single-family home located on "Lot No. 5, Falling Creek Estates" in Milford, Pennsylvania. (Doc. 41-1; Doc. 47 at ¶ 5).

From Plaintiffs' $490,216.00 obligation, the Construction Agreement allocated $60,000 towards the purchase of the property and $430,216.00 towards the single-family dwelling's construction costs and "other improvements" ("Construction Costs"). (Doc. 41-1; Doc. 47 at ¶¶ 5-6). Plaintiffs contracted with ESSA Bank & Trust ("ESSA") in a separate contract, titled "Construction Loan Agreement," to satisfy the Construction Costs.[2] (Doc. 41-2; Doc. 47 at ¶ 7).

Per the Construction Loan Agreement, ESSA paid Falling Creek, LLC $100,000.00 of the Construction Costs and escrowed the Construction Costs' remaining balance of $330,216.00. (Doc. 41-2; Doc. 47 at ¶ 8). The Construction Loan Agreement directed ESSA to disburse funds from the escrowed $330,216.00 in accordance with a schedule based on the stages of the construction. (*Id.*).

[2] ESSA is not a party in this action. ESSA is the financial institution that provided Plaintiffs with the financing that the Construction Agreement required Plaintiffs to obtain. (*See* Docs. 41-1, 41-2).

The parties dispute the events in the Construction Agreement's aftermath. Plaintiffs claim that, by November of 2017, Falling Creek, LLC failed to complete the necessary construction to obtain a certificate of occupancy (Doc. 47 at ¶ 9). Though Plaintiffs do not state that they withheld payment, it appears that Plaintiffs stopped making payments to Defendants once Plaintiffs could not obtain a certificate of occupancy. (*See* Doc. 47 at ¶¶ 8-10). Defendants contend that Defendants stopped construction because Plaintiffs stopped making payments. (Doc. 48-6 at 2; Doc. 48 at ¶ 7). According to Defendants, Plaintiffs' nonpayment is why Defendants did not complete construction. (*Id.*). Defendants point out in their opposition brief that Plaintiffs filed for bankruptcy "[i]n or about September 2017." (Doc. 48-6 at 2 (citing (Doc. 41-3)). Yet, Plaintiffs claim that money was available – ESSA, according to Plaintiffs, held additional funds in escrow, but refused to release funds to any contractor other than Falling Creek, LLC without Falling Creek, LLC's approval. (Doc. 47 at ¶ 10). Defendants maintain that Plaintiffs owe an outstanding debt of eighteen thousand five hundred dollars ($18,500) pursuant to the Construction Agreement. (Doc. 47 at ¶ 16; Doc. 41-7).

**ii. The HOA Dues**

The Construction Agreement stated that the property was "part of a planned community as defined by the Uniform Planned Community Act." (Doc. 41-1; *See* Doc. 47 at ¶ 18). Defendants assessed Plaintiffs yearly dues of $300.00 ("HOA Dues"). (Doc. 47 at ¶ 20). Plaintiffs did not pay Defendants the HOA Dues. (Doc. 47 at ¶ 26). Plaintiffs claim they did not pay Defendants the HOA Dues because Plaintiffs "were in active Chapter 13 bankruptcy from September 19, 2017, through May 11, 2018, and from August 21, 2018, through September 30, 2022." (Doc. 47 at ¶ 26).

**B. Plaintiffs' Bankruptcy Proceedings**

Before and during the construction dispute, Plaintiffs filed petitions for bankruptcy. (Doc. 41-3; *See* Doc. 47 at ¶ 21). Plaintiffs filed a Chapter 13 Bankruptcy Petition[3] in the Bankruptcy Court for the Middle District of Pennsylvania on September 19, 2017. (Doc. 41-3; Doc. 47 at ¶ 22). Then, on November 13, 2017, Plaintiffs filed a Motion to Reject and/or Reform Executory Contract in the Bankruptcy Court.

[3] Docket No. 5:17-bk-03867-JJT.

(Doc. 47 at ¶ 12). This motion related to the Construction Agreement and the Construction Loan Agreement. (Doc. 41-4). Defendants did not respond to that motion. (Doc. 47 at ¶ 15). On March 9, 2018, the Bankruptcy Court dismissed the Construction Agreement and the Construction Loan Agreement. (Doc. 41-4; Doc. 47 at ¶ 13). Falling Creek, LLC did not file a Proof of Claim for the Construction Costs. (Doc. 47 at ¶ 15). Similarly, Plaintiffs claim that Falling Creek, LLC could have filed a Proof of Claim for the HOA Dues but failed to do so. (Doc. 47 at ¶ 24). Later, on May 11, 2018, the Bankruptcy Court dismissed Plaintiffs' bankruptcy petition. (Doc. 47 at ¶ 22).

Plaintiffs declared bankruptcy a second time on August 21, 2018, filing another Chapter 13 Bankruptcy Petition[4] in the Bankruptcy Court for the Middle District of Pennsylvania. (Doc. 47 at ¶ 23). Defendants' Additional Statement of Facts notes that Plaintiffs listed "Falling Creek Builders" as a creditor. (Doc. 48 at ¶ 42 (citing Doc. 41-1)). As with the first bankruptcy, Plaintiffs claim that Falling Creek, LLC could have filed a Proof of Claim for the HOA Dues. (Doc. 47 at ¶

[4] Docket No. 5:18-bk-03468-MJC.

25). The Bankruptcy Court dismissed the action on September 30, 2022. (Doc. 47 at ¶ 23).[5]

### C. Defendants' Communications with Plaintiffs' and Plaintiffs' Third-Party Buyer

Starting on January 30, 2021, Defendants initiated communications with Plaintiffs to collect the Construction Costs and the HOA Dues and accompanying late fees. (Doc. 47 at ¶¶ 29-30).

#### i. The January Letter

Plaintiffs claim that "Falling Creek Builders, LLC" sent Plaintiffs a letter on January 30, 2021, on behalf of "Falling Creek, LLC," attempting to collect the HOA Dues and late fees ("the January Letter"). (Doc. 47 at ¶ 30 (citing Doc. 41-6)). An individual named Julianne Lee Anderson of "Falling Creek Builders, LLC" signed the January Letter. (Doc. 41-6). The letterhead reads, "Falling Creek Builders, LLC" with an address of "287 Minsi Trail W., Long Pond, PA 18334" and phone number "(570) 500-5225." (Doc. 41-6). The logo on

---

[5] "The effect of dismissal of a bankruptcy case is set forth at 11 U.S.C. § 349. Unless the court indicates otherwise, the general effect of an order of dismissal is to restore the ***status quo ante***. It is as though the bankruptcy case never had been brought." *In re Lewis & Coulter, Inc.*, 159 B.R. 188, 190 (Bankr. W.D. Pa. 1993) (emphasis in original).

the letterhead displays "Falling Creek Builders." (Doc. 41-6). The January Letter directed Plaintiffs to "make check payable to Falling Creek" and also states that it is "an attempt to collect a debt" for "Falling Creek, LLC . . . the original creditor." (Doc. 41-6).

**ii. The March Letter**

On March 9, 2022, Plaintiffs claim that Defendants, this time via the entity "Falling Creek Builders," sent a second, similar letter to collect balances for Construction Costs ($18,500), HOA Dues ($2,100) and Late Fees ($4,200) ("the March Letter"). (Doc. 47 at ¶ 31; Doc. 41-7). Jacob Rybner of "Falling Creek Builders" signed the March Letter. (Doc. 41-7). The March Letter's heading lists "Falling Creek Builders"—instead of "Falling Creek Builders, LLC"—with a different address from the January Letter, "5 Saint Marks Pl #4, Brooklyn, NY 12217," but the same phone number: "(570) 500-5225." (*Id.*).[6] Like the

---

[6] Note that "570" is a Pennsylvania area code. *Area Code Query*, North American Numbering Plan Administrator, https://secure.nanpa.com/public-report/npa/search-area-codes/section/query (last visited September 15, 2026) (enter "570" in the search bar). The Court takes judicial notice that area code 570 covers part of Pennsylvania. *See* Fed. R. Evid. 201; *see also, e.g.*, *Welsh ex rel. Green v. Charles Schwab & Co.*, No. 3:25-CV-298-KHJ-MTP, 2025 WL

January Letter, the March Letter featured the same "Falling Creek Builders" logo and directed Plaintiffs to "make check payable to Falling Creek." (*Id.*). However, while the March Letter still stated that it was "an attempt to collect a debt," it listed "Falling Creek"—not "Falling Creek, LLC"—as the original creditor. (*Id.*).

**iii. The August Letter**

Defendants sent a third communication on August 1, 2022 ("the August Letter"). (Doc. 47 at ¶ 33 (citing (Doc. 41-9)). But Defendants did not send the August Letter to Plaintiffs; they sent it to Laura Puopolo, seeking payment for Plaintiffs' unpaid Construction Costs and HOA dues and late fees. (Doc. 47 at ¶¶ 33-34). Defendants sent the August Letter to Laura Puopolo because, on June 1, 2022, Plaintiffs contracted with Laura Puopolo to sell the premises for $750,000.00. (Doc. 47 at ¶¶ 32-33 (citing Doc. 41-8)). Jacob Rybner, the same signatory of the March Letter, signed the August Letter. (Doc. 41-9). Similarly, the August Letter listed "Falling Creek Builders" with an address of "5 Saint Marks Pl #4, Brooklyn NY 11217" and phone

---

2496126, at *4 & n.3 (S.D. Miss. Aug. 29, 2025) (taking judicial notice of geographic area code assignment).

number of "(570) 500-5225." (Doc. 41-9). The August Letter included the same "Falling Creek Builders" logo as the January and March Letters, asked for "a check payable to Falling Creek," and stated that it was "an attempt to collect a debt" for "Falling Creek . . . the original creditor." (Doc. 41-9). Defendants claim that Jacob Rybner, Defendants' corporate designee, sent the letter to Laura Puopolo after he "was contacted regarding a disclosure under the Uniform Planned Community Act." (Doc. 44 at ¶ 44). According to Defendants, the August Letter contained "the statutorily prescribed information." (Doc. 44 at ¶ 44).

To close on the property's sale to Laura Puopolo, Plaintiffs state that they "elected to pay the full amount demanded by Defendants, because the letter on August 1, 2022, interfered with Plaintiffs' ability to sell the property." (Doc. 47 at ¶ 36). Defendants admit that Plaintiffs remitted payment for the outstanding Construction Costs and HOA Dues and late fees. (Doc. 48 at ¶ 44).

## IV. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, "[i]nferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

"A federal court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgement, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the

court must simply "determine whether there is a genuine issue for trial." *Id.*

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see*

*also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

## V. DISCUSSION

### A. Defendants' Untimely Response to Plaintiff's First Request For Admissions to Defendants

Plaintiffs preliminarily argue that Defendants admitted the matters in Plaintiff's First Request For Admissions to Defendants ("Request for Admissions") because Defendants' served their response after the deadline. (Doc. 42 at 10). Defendants counter that it would be inequitable for this Court to deem Plaintiffs' requests admitted. (Doc. 48-6 at 10). In reply, Plaintiffs assert that Rule 26(a)(3) is "unambiguous: a matter is admitted unless a written answer or objection is served within thirty days." (Doc. 49 at 13). Plaintiffs further contend that Defendants' delay, and eventually inadequate answers, forced Plaintiffs to expend additional resources. (*Id.*). Finally, Plaintiffs suggest that excusing Defendants' conduct would "reward poor behavior." (*Id.* at 14).

Under Rule 36(a)(3) of the Federal Rules of Civil Procedure, "a request for admission is deemed admitted if a party does not respond within 30 days." *Gwynn v. City of Philadelphia*, 719 F.3d 295, 298 (3d

Cir. 2013). Matters admitted pursuant to Rule 36 are "conclusively established unless the court, on motion, permits the admission[s] to be withdrawn or amended." Fed. R. Civ. P. 36(b). The court has discretion to permit a party to withdraw or amend admission(s) "if: (1) 'doing so would promote the presentation of the merits of the action'; and (2) 'the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.'" *Gwynn*, 719 F.3d at 298 (quoting Fed. R. Civ. P. 36(b)). "Courts have defined prejudice under Rule 36 as relating 'to the difficulty a party may pace in proving its case because of the sudden need to obtain evidence required to prove the matter that had been admitted.'" *Combs v. Sid Harvey Indus., Inc.*, No. CV 25-6539, 2026 WL 1959251, at *6 (E.D. Pa. July 6, 2026) (quoting *Vision Indus. Grp., Inc. v. Acu Plasmold, Inc.*, No. 18-6296, 2025 WL 3764994, at *2 (D.N.J. Dec. 30, 2025).

In *Combs v. Sid Harvey Industries, Inc.*, the district court applied *Gwynn* and found that permitting the responding party's late response would not have prejudiced the requesting party. 2026 WL 1959251. While the responding party replied 52 days after Rule 36's 30-day deadline—a "significant" delay—the court declined to deem all the

matters admitted because doing so "would hinder resolution of the merits of [the responding party's] claims." *Id.* at *1. Permitting the responding party to provide substantive responses would "further he fact-finding mission of the litigation." *Id.* at *4. The court factored in its decision to extend the discovery deadline in finding that permitting the amended response would not prejudice the requesting party. *Id.* at *6.

Here, Plaintiffs state that Plaintiffs forwarded the Request for Admissions to Defendants on September 7, 2025. (Doc. 49 at 12). The parties agree that Defendants did not provide Plaintiffs answers until October 17, 2025. (Doc 49. at ¶ 12); (Doc. 44 at ¶ 36). Defendants admit that their response was untimely. (Doc. 44 at ¶ 36).

Nevertheless, this Court declines to deem Defendants as having admitted the matters in the Request for Admissions. "Upholding the admissions would severely impact [Defendants'] ability to present the merits of their case." *Gwynn*, 719 F.3d at 298. The Request for Admissions asks Defendants to admit to being a "debt collector" as defined by 15 U.S.C. § 1692a(6). This is an issue central to the present motion. Further, Defendants' untimely response, at best, minimally

prejudiced Plaintiffs. Defendants' response was only 10 days late and 15 days before the initial deadline for the close of discovery. Even if 15 days would not have been enough time for Plaintiffs to modify their discovery strategy considering Defendants' response, discovery was extended in this case just like it was in *Combs*. This Court's decision to grant Plaintiffs' request to extend discovery provided Plaintiffs with an additional 60 days and ample time to alter their discovery strategy based on the content of Defendants' late responses. (*See* Doc. 39 (extending discovery from November 1, 2025 to December 31, 2025)).

The Defendants will be permitted to withdraw their deemed admissions because "deeming the matters admitted would hinder resolution of the merits of their claims." *See Combs*, 2026 WL 1959251 at *1, *4 ("Allowing withdrawal and amendment of the proposed substantive responses is consistent with the well settled Third Circuit preference for adjudicating cases on the merits whenever possible.")[7]

---

[7] While Defendants acknowledge the necessity of a motion to withdraw or amend their responses to the Requests for admission, Defendants need not submit "a formal, written motion" because Defendants' "denials may be deemed the functional equivalent of a request to withdraw." *See Chancellor v. City of Detroit*, 454 F.Supp.2d 645, 666 (E.D. Mich 2006) ("However, a formal, written motion to withdraw is

### B. Defendants' Alleged FDCPA Violations

The Court turns to Plaintiffs' contention that Defendants violated the FDCPA. Plaintiffs argue that Defendants violated Sections 1692f(1) and 1692c(b). Section 1692f(1) forbids debt collectors from collecting any amount unless a law permits collection or an agreement creating the debt expressly authorizes collection of the amount. 15 U.S.C. § 1692(f)(1). Section 1692c(b) restricts a debt collector's communications with third parties. 15 U.S.C. § 1692c(b).

Preliminarily, "[t]o prevail on an [FDCPA] claim, a plaintiff must prove that (1) [they] are a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

Here, the parties dispute whether Defendants are "debt collectors" pursuant to 15 U.S.C. § 1692a(6). (Doc. 42 at 11; Doc. 48-6 at 4). Because Plaintiffs cannot prove that Defendants are debt collectors as a

---

not necessary, and a withdrawal or request to withdraw may be made orally or may be imputed from a party's actions.").

matter of law, summary judgment in Plaintiffs' favor is inappropriate. Accordingly, the Court need not address the merits of Plaintiffs' specific FDCPA claims under Sections 1692f(1) and 1692c(b).

**i. Whether Defendants are a "Debt Collector"**

For the FDCPA to apply to Defendants, Plaintiffs must prove that Defendants are a "debt collector" under the statute. *Id.*

Plaintiffs argue that Defendants "Falling Creek Builders" and "Falling Creek Builders, LLC" are debt collectors because both entities sent out collection letters to Plaintiffs on behalf of creditors: Defendant "Falling Creek, LLC" and "Falling Creek."[8] (Doc. 42 at 12). Plaintiffs "alternatively" argue that the creditors "Falling Creek, LLC" and "Falling Creek" qualify as debt collectors "under 15 U.S.C. Section 1692a(6) because they sought to collect the alleged debts using the aliases of "Falling Creek Builders" and "Falling Creek Builders, LLC" when the actual creditor is "Falling Creek, LLC." (Doc. 42 at 12). Defendants counter that Plaintiffs cannot prevail on summary judgment because there is a factual dispute as to whether Defendants

[8] "Falling Creek, LLC" is a named defendant, but "Falling Creek" is not.

fall under 15 U.S.C. § 1692a(6)'s exclusions to the definition of a debt collector. (Doc. 48-6 at 5-7).

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The statute lists several categories that the term "debt collector" does not include. A creditor's officers or employees that collect debts for the creditor in the creditor's name are not "debt collectors." 15 U.S.C. § 1692a(6)(A). "Debt collector" also does not include "any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and of the principal business of such person is not the collection of debts." 15 U.S.C. § 1692a(6)(B). A "person" under the FDCPA "includes natural persons, corporations, companies, associations, firms, partnerships, societies, and joint stock companies." 12 C.F.R. § 1006.2(k). "In plain English, if a person or company is

attempting to collect a debt owed to themselves, the FDCPA does not consider them a debt collector." *Hill v. UPMC Collections*, No. 4:24-CV-01600, 2025 WL 3176959 (M.D. Pa. Oct. 3, 2025), *report and recommendation adopted*, No. 4:24CV1600, 2025 WL 2965136 (M.D. Pa. Oct. 21, 2025), and *objections overruled*, No. 4:24CV1600, 2025 WL 3091832 (M.D. Pa. Nov. 5, 2025).

**1. Section 15 U.S.C. § 1692a(6)'s Exclusions**

At the summary judgment stage, the issue is whether Plaintiffs can establish that it is undisputed that Section 1692a(6)(A)'s exclusions do not apply to Defendants.

**a. 15 U.S.C. § 1692a(6)(A)**

For Section 1692a(6)(A) to apply to Defendants, the authors of the January Letter and March Letter must have been "Falling Creek, LLC" and "Falling Creek" (the creditors) employees or officers attempting to collect debts for "Falling Creek, LLC" and "Falling Creek" in the creditors' names.

Plaintiffs argue that there is no disputed material fact as to whether Defendants qualify as debt collectors under Section

1692a(6)(A) because Defendants' untimely response to Plaintiffs' requests for admissions and Defendants' failure to produce evidence from the record to demonstrate that Defendants are not debt collectors. (Doc. 49 at 6). Defendants contend that "a material fact exists whether Defendants are considered a debt collector based upon Section 1692a(6)(A)" because "Defendants' officers or employees" sent the January and March Letters.[9] (Doc. 48-6 at 7). For the January Letter, Defendants argue that "a material fact exists whether Defendants are considered a debt collector based upon Section 1692a(6)(A)" because Julianne Lee Anderson, Defendants' employee, sent the letter. (Doc. 48-6 at 7). For the March Letter, Defendants argue that "a material fact exists whether Defendants are considered a debt collector based upon Section 1692a(6)(A)" because Mr. Rybner sent the letter "on behalf of the company in which he is an owner." (Doc. 48-6 at 7).

Both parties produced scant evidence regarding Section 1692a(6)(A)'s applicability. Plaintiffs offer the letters themselves as evidence that Defendants are debt collectors. (Doc. 42 at 12; Doc 41-6;

[9] Defendants do not mention the third August Letter in their argument that they are not debt collectors. (*See* Doc. 48-6 at 5-7).

Doc. 41-7). For Plaintiffs, Defendants are debt collectors as a matter of law because Defendants "Falling Creek Builders and Falling Builders, LLC" sent the two letters on behalf of creditors: "Falling Creek, LLC" and "Falling Creek." (Doc. 42 at 12). Plaintiffs did not address Section 1692a(6)(A)'s exceptions at all in their initial brief. (*See* Doc. 42). In reply, Plaintiffs' only evidence that Section 1692a(6)(A) does not apply is Defendants' lack of evidence. (Doc. 49 at 6-7). Defendants state, without a citation to material in the record, that Juliane Lee Anderson, the author of the January Letter, is the Office Coordinator of "Falling Creek Builders, LLC" to prove that a disputed fact exists as to Section 1692a(6)(A)'s applicability. (Doc. 48-6 at 7). Defendants additionally state, by citing to an affidavit in the record, that Jacob Rybner, the author of the March Letter, is the sole shareholder and officer of "Falling Creek Builders, Inc." and a member of "Falling Creek, LLC," owning a 50% interest. (Doc. 48-5 at 2).

Plaintiffs have not met their summary judgment burden in showing that it is undisputed that Defendants fall under Section 1692a(6)(A)'s exclusion. The letters suggest that Defendants might be a debt collector under the main definition of a debt collector, but Plaintiffs

must go the distance and prove that Defendants do not fall under the term's exclusions. Plaintiffs failed to address the exclusions in their initial argument and only pointed to Defendants' alleged deficiencies in Defendants' summary judgment burdens as non-movants. As Defendants note, Plaintiffs did not take any depositions of any parties. (Doc. 48-6 at 6). Plaintiffs could have sought to discover evidence to prove that Section 1692a(6)(A) did not apply to Defendants, but failed to do so.

Even if Plaintiffs met their burden, Defendants produced just enough evidence to demonstrate that there is a disputed material fact as to Section 1692a(A)(6)'s applicability to the January Letter and the March Letter. Julianne Lee Anderson of "Falling Creek Builders, LLC" signed the January Letter that listed Defendant "Falling Creek, LLC" as the original creditor. (Doc. 41-6 at 1). Defendants state that Ms. Anderson is the Office Coordinator of "Falling Creek Builders, LLC."[10]

---

[10] While this kind of statement is the kind of mere conclusory allegation and self-serving testimony that normally cannot be used to avoid summary judgment, Plaintiffs' failure to produce evidence in the record to contradict it makes it enough to demonstrate that a disputed material fact exists. It must be noted that Defendants were given the opportunity to point to evidence in the record that Julianne Lee Anderson was an employee Falling Creek Builders, LLC in the Court's

(Doc. 48-6 at 7). For Defendant "Falling Creek Builders, LLC," the entity that sent the letter, to merely be considered a "creditor," Defendant "Falling Creek, LLC," the entity the letter lists as the "creditor," must have employed Julianne Lee Anderson for Section 1692a(6)(A)'s exclusion to apply. "Falling Creek Builders, LLC," the entity that Defendants purport to employ Ms. Anderson, is technically different than "Falling Creek, LLC," the original creditor listed in the letter. But given that Defendants state that all Defendants are under common ownership, (doc. 48-6 at 6), a reasonable juror could differ on whether "Falling Creek Builders, LLC" is the same entity as "Falling Creek, LLC." If a juror were to find that both entities are related, and that Ms. Anderson is an employee of the creditor, then Section 1692a(6)(A)'s exclusion would apply to Defendant "Falling Creek Builders, LLC."

Jacob Rybner of "Falling Creek Builders" undersigned the March Letter that listed Defendant "Falling Creek" as the original creditor.

---

Order of July 13, 2026, (doc. 46), yet failed to do so. Despite this omission, courts favor deciding matters on the merits rather than disposing them on technicalities.

(Doc. 41-7 at 1). For Defendant "Falling Creek Builders" to merely be considered a creditor with regards to sending the March Letter, Jacob Rybner would need to be an officer of "Falling Creek"—the original creditor named in the letter. Defendants state that Mr. Rybner is "a corporate officer for all named entities." (Doc. 48-6 at 7).[11] Via affidavit, Mr. Rybner swears that (1) he is the sole shareholder and officer of "Falling Creek Builders, Inc." and (2) he is a member of "Falling Creek, LLC," owning a 50% interest. (Doc. 48-5 at 2). The affidavit does not specify whether Rybner is an officer of "Falling Creek." Based on the affidavit, Rybner is a "member" of "Falling Creek, LLC." Technically, "Falling Creek, LLC" is a different entity than "Falling Creek" and, even if they were the same entity, a "manager" of an LLC is not the same as an "officer." (Doc. 48-6 at 6). But based on Defendants' statement that Mr. Rybner is a corporate officer for all named entities, a reasonable juror could differ on whether Mr. Rybner was an officer of "Falling Creek," the original creditor named in the

[11] While this kind of statement is the kind of mere conclusory allegations and self-serving testimony that normally cannot be used to avoid summary judgment, Plaintiffs' failure to produce evidence in the record to contradict it makes it enough to demonstrate that a disputed material fact exists.

letter. Accordingly, there is a disputed material fact whether Section 1692(a)(6)(A)'s exception applies to the March Letter.

**b. 15 U.S.C. § 1692a(6)(B)**

For Section 1692a(6)(B) to apply, Defendant "Falling Creek Builders, LLC" and Defendant "Falling Creek Builders"—the senders of the letters—must have: (1) been related to Defendant "Falling Creek, LLC" and "Falling Creek" by common ownership or affiliated by corporate control while acting as debt collectors for Defendant "Falling Creek, LLC" and "Falling Creek"; and (2) collected debts only for persons to whom it is so related or affiliated—Defendant "Falling Creek, LLC" and "Falling Creek." *See* 15 U.S.C. § 1692a(6)(B). If those two conditions are met, Section 1692a(6)(B) applies to "Falling Creek Builders, LLC" and "Falling Creek Builders" if the principal business of the person to whom the debt is owed—"Falling Creek, LLC" and "Falling Creek"—is not the collection of debts." *Id*.

Plaintiffs argue that Section 1692a(6)(B) does not apply to Defendants because "Falling Creek Builders, LLC" and "Falling Creek, LLC" are two companies that exist independently. (Doc. 49 at 5). For Plaintiffs', Jacob Rybner's 50% ownership interest in both "Falling

Creek Builders, LLC" and "Falling Creek, LLC" does not change the fact that both companies exist independently. (*Id.*). Additionally, Plaintiffs point out that the letters make "no reference to any corporate affiliation between the two entities." (*Id.*). Defendants argue that "a material fact exists whether the exception in Section 1692a(6)(B) applies" because "[a]s will be borne out in discovery, all Defendants are under common ownership."[12] (Doc. 48-6 at 6). Because Jacob Rybner is "a corporate officer for all named entities," Defendants claim that "[a] material fact thus exists whether all entities share a common ownership and are 'related by common ownership or affiliated by corporate control' such that Defendants are not considered a debt collector.'" (*Id.* at 6-7).

Like their arguments for Section 1692a(6)(A), the parties produced little evidence as to Section 1692a(6)(B)'s applicability. Plaintiffs offer the letters themselves as evidence that Defendants are debt collectors.

---

[12] The statement that "As will be borne out in discovery, all Defendants are under common ownership" is puzzling. At the request of the parties, the discovery deadline was extended until December 31, 2025, (doc. 39), and no further continuances were requested. Given that discovery has closed, it is unclear what will be "borne out." Moreover, information regarding whether all Defendants are under common ownership is in the exclusive possession of Defendants, who could have easily adduced evidence regarding the ownership of the entities in question.

(Doc. 42 at 12; Doc 41-6; Doc. 41-7). In reply, Plaintiffs' only evidence that Section 1692a(6)(B) does not apply is an assertion that "Falling Creek Builders, LLC" and "Falling Creek, LLC" exist independently and the fact that the letters make no reference to any corporate affiliation between the two entities. (Doc. 49 at 6-7). Defendants produce Jacob Rybner's affidavit as proof that "Jacob Rybner is the sole shareholder and officer of Falling Creek Builders, Inc. and a member of Falling Creek LLC owning 50% share of that entity." (Doc. 48-6 at 6; Doc. 48-5). Defendants also state that Jacob Rybner is the corporate designee and officer for all named entities.[13] (Doc. 48-6 at 6).

Plaintiffs have not met their summary judgment burden in showing that it is undisputed that Defendants fall under Section 1692a(6)(B)'s exclusion. Plaintiffs failed to address the exclusion in their initial argument and their argument in their reply brief is unavailing. Via Jacob Rybner's affidavit, Defendants have

[13] While this kind of statement is the kind of mere conclusory allegations and self-serving testimony that normally cannot be used to avoid summary judgment, Plaintiffs' failure to produce evidence in the record to contradict it makes it enough to demonstrate that a disputed material fact exists.

demonstrated that a disputed material fact exists as to the March Letter because a reasonable juror could conclude that "Falling Creek Builders, Inc." and "Falling Creek" are affiliated by common ownership or control based on the evidence in Jacob Rybner's affidavit that Jacob Rybner is an owner of both entities. While the affidavit is unpersuasive for the January Letter, because it only demonstrates that "Falling Creek Builders, *Inc*." (emphasis added) and "Falling Creek, LLC" are under common ownership and does not indicate whether the entity that sent the letter—"Falling Creek Builders, *LLC*" (emphasis added)—is affiliated with "Falling Creek, LLC," a reasonable juror could conclude based on Defendants' statement that Jacob Rybner is a corporate officer for all named entities that "Falling Creek Builder, LLC" and "Falling Creek, LLC" are affiliated by corporate control.[14]

**2. "The False-Name Exception"**

Plaintiffs alternatively argue that Defendant Falling Creek, LLC is a debt collector because Falling Creek, LLC attempted to collect debts using the alternate names "Falling Creek Builders" and "Falling Creek

[14] It is noted that Plaintiffs' failed to conduct discovery related to Defendants' corporate structure.

Builders, LLC." (Doc. 42 at 12). In other words, even if Defendants fall under Section 1692a(6)'s exclusions and are only "creditors," Plaintiff appears to argue that 15 U.S.C. Section 1692a(6)'s "false-name exception" applies.

The applicability of the "false-name exception" depends on whether it is concluded that Defendants are a "debt collector" or a "creditor." Even if Plaintiffs have not demonstrated that Defendants do not fall under Section 1692a(6)'s exclusions as a matter of law, Defendants might still be held to the FDCPA if the "false-name exception" applies. It is concluded that the false-name exception's applicability would be a question for the jury in this case.

The false-name exception is the exception to the general rule that a "creditor" is not a "debt collector." *Abramov v. Bullard*, No. CV 24-4172-KSM, 2025 WL 2394038, at *5 (E.D. Pa. Aug. 18, 2025). Like the FDCPA defines a "debt collector," the statute also defines a "creditor." A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). "Debt collectors" are generally not "creditors" under the FDCPA "because collecting debts is often not the 'principal purpose' of a creditor's business, and when it

does attempt to collect a debt, it is typically a debt owed to itself and not one owed to 'another." *Abramov*, 2025 WL 2394038, at *4. However, the FDCPA includes within its definition of debt collector "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. Section 1692a(6). Courts call this FDCPA-provision the "false-name exception."

For the false-name exception to apply "a creditor must (1) use a name other than its own (2) in a way that would indicate a third person is attempting to collect its debt (3) in the process of collecting its own debt." *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 (11th Cir. 2019).

The second component is decisive. A "creditor" is a "debt collector" when the creditor uses an alternate name in a way that would make a "least sophisticated consumer" believe that the alternate name "indicates a third party's involvement in collecting a debt." *Id.* at 1210.

The "least sophisticated consumer" is an objective standard that "protects 'naïve consumers' with a minimal understanding of personal finance and debt collection." *Id.* (quoting *LeBlanc v. Unifund CCR*

*Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam)). Courts presume that least sophisticated consumer "'possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" *Id.* "The least sophisticated consumer, though not unreasonable, is 'ignorant' and 'unthinking' . . . 'gullible," and of 'below-average sophistication or intelligence.'" *Id.* "The perspective of the least sophisticated consumer arises from the totality of the circumstances." *Id.* at 1211.

While there is no bright-line rule, the more similar a creditor's actual name to the creditor's alternate name that the creditor used in the debt collection communication, the less likely a "least sophisticated consumer" would believe that a third party was involved in collecting the debt. *See Abramov*, 2025 WL 2394038 at *5 ("[C]ourts often decline to find the false-name exception applies when there is substantial similarity between the creditor's name and the name used in the debt collection communication, reasoning that even the least sophisticated consumer would understand the entities are related and that the communication is, in fact, from the creditor or a related entity."). For example, in *Pinson*, the court found that an "unsophisticated consumer

could not plausibly have been misled" by the difference between "Chase Home Finance LLC" and "JPMorgan Chase Bank, N.A." 942 F.3d at 1211. On the other hand, in *Abramov*, the court applied the false-name exception when the defendant, "Konkrete Investments," attempted to collect a debt under the name "Watchman Property Management." 2025 WL 2394038m, at *6. Ultimately, given that the least sophisticated consumer's perspective arises from the totality of the circumstances, "[w]hether the least sophisticated consumer would think a name indicates a third party's involvement in collecting a debt will ordinarily present a jury question." *Pinson*, 942 F.3d at 1210.

Here, Defendant Falling Creek Builders is arguably a "creditor" under the FDCPA because Defendants allege that Plaintiffs owe Defendants debts: the unpaid balance of the Construction Costs and HOA Dues and late fees. And despite Defendants' denial of being a "creditor" in their responses to the Requests for Admissions (Doc. 44-3 at ¶ 2), Defendant Falling Creek Builders, LLC labels "Falling Creek, LLC" and "Falling Creek" as a "creditor" in the January, March, and August Letters it sent to Plaintiffs that are at issue. (Docs. 44-6, 44-7, 44-9).

Because Defendant Falling Creek, LLC is a creditor, it would not be a "debt collector" under the FDCPA if it were attempting to collect a debt from Plaintiffs under its own name. However, Falling Creek, LLC attempted to collect its debts from Plaintiffs under the names "Falling Creek Builders, LLC" and "Falling Creek Builders." Using letterheads that read "Falling Creek Builders" and addresses that read "Falling Creek Builders, LLC" and "Falling Creek Builders," Defendants explicitly state to Plaintiffs that "Falling Creek, LLC" and "Falling Creek" are "the original creditor[s]" and that the letters are "attempt[s] to collect a debt and information obtained will be used for that purpose." (Docs. 44-6, 44-7, 44-9). Accordingly, the issue is whether the false-name exception applies – i.e., whether Defendant Falling Creek's use of the names "Falling Creek Builders, LLC" and "Falling Creek Builders" would make a least sophisticated consumer believe that a third party was involved with collecting the debt.

A reasonable juror could differ on whether a least sophisticated consumer would believe that a third party was involved with collecting the debt. Plaintiffs contracted with "Falling Creek, LLC" and there is "substantial similarity" between the names "Falling Creek, LLC,"

"Falling Creek," "Falling Creek Builders," and "Falling Creek Builders, LLC." This case is unlike *Abramov*, where the names "Koncrete Investments" and "Watchman Property" were distinct. And the discrepancy between Defendants' names is even smaller than the discrepancy between "Chase Home Finance LLC" and "JPMorgan Chase Bank, N.A." in *Pinson*. Additionally, Plaintiffs' contract with Defendant Falling Creek, LLC was for construction. A reasonable juror could find that a least sophisticated consumer would assume "Falling Creek, LLC" to be the same entity as "Falling Creek Builders, LLC" given the nature of Defendant Falling Creek, LLC's business.

However, a reasonable juror could also find that the Defendants' language could confuse a least sophisticated consumer. A least sophisticated consumer might believe that "Falling Creek Builders, LLC" and "Falling Creek Builders" were distinct from "Falling Creek, LLC" and "Falling Creek" because of the sentence "[Falling Creek, LLC/Falling Creek], is the original creditor in this matter." (Docs. 44-6, 44-7, 44-9).

As noted in *Pinson*, the false-name exception's applicability is usually one for the jury. This case is no different. The Court finds that

there is a genuine dispute of material fact whether a least sophisticated consumer would believe that Defendants' varied names would indicate a third party's involvement.

## VI. CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion for Partial Summary Judgment will be denied. (Doc. 41).

An appropriate Order is attached.

Dated: September 16, 2026

**/s/ Leo A. Latella**
Leo A. Latella
United States Magistrate Judge